UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Not for Publication**

JAMES F. HOSKINS,

    *Plaintiff*,

v.

VALCOR ENGINEERING, et al.,

    *Defendant*.

Civil Action No. 14-6536

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    The present matter comes before the Court on Defendant Valcor Engineering Corporation's ("Valcor" or "Defendant") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] D.E. 52.

---

[1] Additionally, before this Court is Plaintiff's motion to strike Defendant's statement of uncontested facts pursuant to Local Rule of Civil Procedure 56.1. D.E. 56. Plaintiff argues that Defendant failed to supply its statement of material facts with its motion for summary judgment, and instead filed it over a month later. *Id.* Defendant responds that it inadvertently left out its statement of material facts and attributes this to "counsel error." D.E. 57. Plaintiff is correct that Defendant failed to comply with Local Rule 56.1(a), which requires a party to submit a statement a statement of material facts not in dispute with a motion for summary judgment. This rule also provides that "[a] motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed." L. Civ. R. 56.1(a). However, a court may decline to deny such motions in instances where there is "no evidence of bad faith on the part of the moving party." *Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 606-07 (D.N.J. 2000). In this case, the Court finds no evidence of bad faith. Valcor filed its statement of facts on August 1, 2016 and gave Plaintiff the opportunity to respond. Plaintiff instead chose to file a motion to strike Defendant's statement of facts. Therefore, the Court will not deny summary judgment on this procedural ground and will address the merits of Defendant's motion. *See New Jersey Envtl. Fed'n v. Wayne Twp.*, 310 F. Supp. 2d 681, 689 (D.N.J. 2004) (finding no evidence of bad faith when defendant

*Pro se* Plaintiff James Hoskins ("Plaintiff") opposes this motion.[2] This case concerns allegations of disability discrimination by Defendant when Plaintiff worked for Defendant as an employee. This motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions, and for the reasons stated below, Defendant's motion is granted.

## I. BACKGROUND[3]

Plaintiff was first diagnosed with the Human Immunodeficiency Virus ("HIV") in 1993 while in the Virginia Portsmouth Naval Hospital. Hoskins Tr. 27:10–27:23. This diagnosis was confirmed by further testing in 1995. *Id.* On March 15, 2010, the Department of Veterans Affairs ("VA") issued a decision in response to a claim by Plaintiff for "increased evaluation." Connelly Cert., Ex. 6. The decision indicated that Plaintiff suffered from HIV, which was "ten percent disabling," since he had been in remission without treatment since 1993 and suffered from no "constitutional symptoms." *Id.*

In July 2010, Valcor hired Plaintiff as an "Assembly and Test technician." AC, at *1. There is no evidence that, when hired, Plaintiff disclosed, or Defendant knew of, Plaintiff's HIV status. On April 19, 2012, Plaintiff prepared a memorandum that was addressed to William Mann,

---

gave plaintiff an opportunity to respond to its belated statement of facts and plaintiff waived that right). Thus, Plaintiff's motion to strike Defendant's statement of uncontested facts is denied.

[2] Defendant's brief in support of its motion for summary judgment will be referred to hereinafter as "Def. Br." (D.E. 52-4); Plaintiff's opposition to Defendant's motion will be referred to "Pl. Opp'n" (D.E. 54); and Defendant's reply brief will be referred to "Def. R.Br." (D.E. 55).

[3] The facts herein come from the evidence in the record, including: Plaintiff's Amended Complaint ("AC") (D.E. 18), James Hoskins Deposition ("Hoskins Tr.") (D.E. 52-1, Ex. 2), the Exhibits attached to Kathleen Connelly's (Defendant's Attorney) Certification ("Connelly Cert.") (D.E. 52-1, Ex. 1-14), and William Mann's (the Vice President of Human Resources at Valcor) Certification (Mann's Cert.) (D.E. 52-3).

2

Valcor's Human Resources Manager. Connelly Cert., Ex. 3. The memorandum requested "reasonable accommodations" due to Plaintiff's status as a "disabled Veteran." *Id.* Specifically, Plaintiff requested permission to take time off from work to attend medical appointments without using sick or vacation days pursuant to Valcor's employment policies. *Id.* Additionally, Plaintiff requested "to be allowed to take additional breaks on an as needed basis." *Id.* Although there were documents pertaining to Plaintiff's medical appointments annexed to the memorandum, no documents indicated Plaintiff's HIV status. *Id.*

On April 24, Plaintiff attended a meeting with Mann (Valcor's Vice President of Human Resources), Speakman (Human Resources Manager), and Michael Avallone (Vice President of Operations) regarding his request for accommodations. Hoskins Tr. 41:05–41:20. Following this meeting, Speakman prepared a memorandum documenting the meeting (the "Speakman Memo"). Connelly Cert., Ex. 4. The Speakman Memo indicated that Plaintiff "said his problem is the immune system." *Id.* Further, the Speakman Memo stated that Mann asked Plaintiff to provide documentation from his doctor to substantiate the disability, and to facilitate Valcor's determination of what type of reasonable accommodation was necessary given the circumstances. *Id.* The Speakman Memo also indicated that Valcor was willing to not charge absences against Plaintiff as long as this documentation was provided. *Id.*

Plaintiff, however, contends that the Speakman Memo did not accurately memorialize the discussions during the meeting. Hoskins Tr. 41:21–42:25. Although Plaintiff admits that Mann requested proof from a doctor, he claims that he disclosed his HIV status during the meeting and that he gave Speakman a copy of the VA decision, which documented his HIV status. *Id.* 42:23–43:09. Unfortunately, Speakman died on March 29, 2015, before she could be deposed. Mann Cert. ¶ 3. Yet, Plaintiff admits that he did not provide the medical documentation that Valcor

3

requested but Valcor nevertheless permitted him to take time off with charging the time to Plaintiff's sick or vacation days.

On July 20, 2012, Plaintiff requested a twelve-week medical leave under the Family Medical Leave Act (FMLA). Connelly Cert., Ex. 8. The request did not mention any of Plaintiff's health issues. *Id.* Plaintiff's Amended Complaint, however, alleged that the leave was due to a "serious health condition that was exasperated due to overexposure of a chemical ... commonly known as Varsol." AC ¶ 1. Plaintiff did not claim that his HIV status was a basis for his requested leave. On July 23, 2012, Speakman provided documents to Plaintiff, which specified that Plaintiff was "required to furnish medical certification of a serious health condition," as well as "furnish period reports every four weeks" while on leave. Connelly Cert., Ex. 9. Plaintiff's leave was scheduled from July 23, 2012 to October 23, 2012. *Id.* Once again, Valcor permitted Plaintiff to take the leave although Plaintiff never provided the medical documentation, or interim reports, as Valcor requested.

On August 17, 2012, while still on FMLA leave, Plaintiff provided Valcor with an application for State Temporary Disability Benefits ("disability benefits"). Connelly Cert., Ex. 10. In the application, Dr. Berreras-Cruz, Plaintiff's treating psychiatrist, completed the Medical Certificate portion. *Id.* She stated that Plaintiff had been under her care since August 10, 2012 for an "adjustment disorder with depressed and anxious mood." *Id.* Dr. Berreras-Cruz did not indicate that Plaintiff's HIV status was a basis for the disability application. She also left blank the section that asked for the date when Plaintiff was unable to perform his work due to his disability. *Id.* She further estimated that Plaintiff would be able to return to work on November 10, 2012. *Id.* By a letter dated September 25, 2012, the New Jersey Manufacturers Insurance Company ("NJM") informed Plaintiff that "[t]he information obtained fails to indicate that the employee is suffering

4

from a compensable condition or one due to an accident arising out of and in the course of employment." Connelly Cert., Ex. 14. Thus, Plaintiff was denied disability benefits.

Plaintiff's application for disability benefits was his only communication with Valcor during his leave. Hoskins Tr. 90:06–90:12. On October 23, 2012, at the end of Plaintiff's twelve-week leave time, Plaintiff did not return to work nor did he inform anyone at Valcor that he would not be returning. *Id.*; Connelly Cert., Ex.11. In a letter dated November 5, 2012, Plaintiff was terminated from his employment with Valcor. Connelly Cert., Ex. 11. Valcor contends that Plaintiff's failure to return to work, coupled with his failure to provide medical updates every four weeks during his leave, led to his termination. *Id.* On November 19, Plaintiff provided Speakman with a letter from Mark Amoroso, a licensed clinical social worker at the VA, indicating that Plaintiff had been under his care since October 17, 2012 for mental health issues related to his displacement from Hurricane Sandy. Connelly Cert., Ex. 12. There was no mention of Plaintiff's HIV status in this letter. *Id.*

Plaintiff also apparently applied for workers' compensation benefits. However, Plaintiff's testimony as to when he applied was self-contradictory. *See* Hoskins Tr. 78:13-78:18. Plaintiff testified that he applied for workers' compensation benefits in 2013 but also indicated that he did so around October 2012. *Id.* 102:15-102:22; 110:20-111:11.

Following Plaintiff's termination, he filed a complaint with the United States Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP") on April 15, 2013. Connelly Cert., Ex. 5. In his complaint to the OFCCP, Plaintiff alleged that Valcor was aware of his HIV status and terminated him on that basis in violation of the Americans with Disabilities Act ("ADA"). *Id.* The OFCCP report issued in August, 2014, concluded that "[b]ased on the totality

of the evidence, with respect to [Plaintiff]s] allegation regarding his HIV status, OFCCP finds insufficient evidence that Valcor was aware of [Plaintiff's] HIV status." *Id.* at *6-7.

## II. PROCEDURAL HISTORY

Plaintiff initiated the current action on October 17, 2014. D.E. 1. Subsequently, Valcor filed a motion for a more definite statement, arguing that Plaintiff's Complaint was too vague and ambiguous for Defendant to reasonably frame a responsive pleading. D.E. 4. Judge Hammer granted this motion, D.E. 15, and Plaintiff filed an Amended Complaint ("AC") on March 11, 2015. D.E. 18. The AC is brought pursuant to: (1) the FMLA; (2) The New Jersey Law Against Discrimination ("NJLAD"); (3) the ADA; and (4) Workers' Compensation Law, N.J.S.A. 34:15-39.1. Defendant answered Plaintiff's AC on March 17, 2015. D.E. 19.

Subsequently, the parties engaged in fact discovery, including numerous depositions. At the conclusion of discovery, Defendant filed its current motion for summary judgment. Def. Br. Plaintiff opposes the motion. Pl. Opp'n. Defendant argues that Plaintiff has not carried his burden of demonstrating a *prima facie* case of disability discrimination under the NJLAD since he cannot establish that he is disabled within the meaning of the NJLAD. Def. Br. at 15-16. Additionally, Defendant contends that Plaintiff has not established, as required by the ADA and the NJLAD, that Valcor was aware of his HIV status when it made the decision to terminate his employment. *Id.* at 17-22. Further, Defendant argues that even if Plaintiff could establish a *prima facie* case of disability discrimination under the ADA or the NJLAD, Defendant had a legitimate basis for its decision to terminate Plaintiff – that Plaintiff failed to return to work after the expiration of his FMLA leave. *Id.* at 23. Lastly, according to Valcor, Plaintiff has no claim of retaliation since Plaintiff only filed his workers' compensation claim *after* Valcor's decision to terminate his employment. *Id.* at 26. Thus, Plaintiff's termination could not have been in retaliation to

6

something that had not yet occurred. *Id.* at 27. Defendant therefore requests summary judgment on all claims. *Id.* at 28.

Plaintiff responds that he is a qualified individual with a disability – and that Defendant knew about this disability – prior to Plaintiff's termination. Pl. Opp'n at 63. Plaintiff alleges that he produced a letter from the VA to Valcor which identified him as a qualified individual with a disability, specifically his HIV status. *Id.* at 64. During his FMLA leave, Plaintiff alleges that Defendant did not communicate with him and that he was under the impression "that nothing was to happen in regards to his employment until after November 10, 2012, or until the Plaintiff was released from his doctor to return to duty." *Id.* at 66. Lastly, Plaintiff claims to have sent his workers' compensation claim to Defendant "on or before September 25, 2012," prior to Plaintiff's termination. *Id.* at 67.

### III. STANDARD OF REVIEW

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence

and decide the truth of the matter, but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The showing required to establish that there is no genuine issue of material fact depends on whether the moving party bears the burden of proof at trial. On claims for which the moving party does not bear the burden of proof, the movant must demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In contrast, "'[w]hen the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact.'" *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). This affirmative showing requires the moving party to show that "'on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.'" *Id.*

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

While pro-se pleadings are held to a more liberal standard, a plaintiff is nonetheless required to produce evidence "sufficient to establish the existence of an element essential to that

party's case." *Williams v. Brown*, No. 05-796, 2007 WL 2079935, at *1 (D.N.J. July 17, 2007). Thus, mere allegations will not suffice. *Id.* "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51.

## IV. DISCUSSION

### A. Legal Framework

Claims under both the ADA and the NJLAD are analyzed under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walton v. Mental Health Ass'n of Southeastern Pa*, 168 F.3d 661, 668 (3d Cir. 1999) (applying the *McDonnel Douglas* Title VII burden shifting test to the ADA); *Guarneri v. Buckeye Pipe Live Servs. Co.*, No. 14-1131, 2016 WL 4680152, at *7 (D.N.J. Sept. 7, 2016) ("Disability discrimination claims under the NJLAD and the ADA are analyzed under the same framework."). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. *Estate of Murray v. UHS of Fairmount, Inc.*, No. 10-2561, 2011 WL 5449364, at *7 (E.D. Pa. Nov. 10, 2011). If a plaintiff fails to establish his *prima facie* case as to each element, defendant is entitled to summary judgment. *Id.*

If, on the other hand, a plaintiff establishes his *prima facie* case, "the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory reason for the discharge." *Cinelli v. U.S. Energy Partners*, 77 F. Supp. 2d 566, 577 (D.N.J. 1999). The defendant satisfies this burden "by introducing evidence which, taken as true, would permit a trier of fact to conclude that unlawful discrimination was not the reason for discharge." *Id.* Thus, a defendant must put forth a legitimate reason for dismissal. *Id.* Once a defendant has proffered a legitimate reason, a plaintiff then "has the opportunity to demonstrate that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Lawrence v. Nat'l Westminster Bank N.J.*, 98

F.3d 61, 66 (3d Cir. 1996). "At this stage, the plaintiff may defeat a summary judgment motion either: (1) by discrediting the proffered reasons for termination, directly or circumstantially, or (2) by adducing evidence that discrimination was more likely than not a motivating or determinative cause of the adverse action." *Id.*

### A. Failure to Accommodate

It is not clear whether Plaintiff is bringing his claims pursuant to the ADA and the NJLAD for failure to accommodate or for discriminatory discharge. Under a failure to accommodate framework, Plaintiff's claims fail. The only allegation that Plaintiff requested an accommodation was on April 19, 2012, when Plaintiff wrote Mann a memorandum requesting time off from work to attend medical appointments without being charged sick or vacation days. Connelly Cert., Ex. 3; Hoskins Tr. 34:01-35:17. Defendant granted this request, despite Plaintiff failing to provide the requested documentation of his disability. Connelly Cert., Ex. 9. Therefore, Plaintiff did not adequately show a failure to accommodate. *See Taylor v. Phoenixville Sch. Dist.*, 184 F. 3d 296, 317 (3d Cir. 1999) (finding that an employer cannot be held liable for failure to accommodate if he makes a "good faith effort" to seek accommodations). On the contrary, Defendant *did* accommodate Plaintiff's request. Thus, the only remaining theory is discriminatory discharge pursuant to the ADA and the NJLAD.

### B. Discriminatory Discharge

To meet the *prima facie* burden in a discriminatory discharge claim brought pursuant to the ADA, a plaintiff must show "(1) he has a disability or is perceived by the employer as disabled; (2) that he [] was qualified for the position from which he [] was discharged; and (3) he has suffered an adverse employment action because of that disability." *Cinelli*, 77 F. Supp. 2d at 573. The

10

NJLAD requires the first three elements of the ADA, as well as one additional element – that the employer sought someone else to perform the same work once plaintiff was discharged. *Id.* n.5.

"Disability"[4] is defined differently in each statute, with the ADA stating that a disability is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(1). A "major life activity" includes the ability to work. *Cinelli*, 77 F. Supp. 2d at 574. The NJLAD defines "disability" as a "physical disability, infirmity ... which is caused by ... illness ... which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." N.J.S.A. 10:5–5(q). The definition of disability under the NJLAD is construed significantly broader than the ADA, intended to cover more than just "severe" disabilities. *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 16 (2002).

In 2008, the ADA was amended in two ways relevant to this dispute.[5] First, prior to the amendments, a plaintiff could succeed under the first element only by showing that his employer perceived him to have a disability that substantially affected a major life activity. 42 U.S.C. § 12102(1). After the amendments, a plaintiff could meet the requirement of being "regarded as" or "perceived" as disabled by establishing that he had "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Second, after the amendments, the determination of whether an impairment constitutes a disability under the ADA "should not demand extensive analysis." 42. U.S.C. §

---

[4] The ADA uses the term "disability," while the NJLAD uses the term "handicap." 42 U.S.C. § 12102(1), N.J.S.A. 10:5-5(q). For the purposes of this Opinion the Court will use "disability" to refer to both.

[5] The ADA amendments took effect on January 1, 2009. *See* Pub. L. No. 110-325, 122 Stat. 3553, 3559.

11

12101(b)(5). Thus, the requisite proof for a disability was broadened under the ADA to more closely resemble the NJLAD. *Id.* § (4)(A).

At the outset, the Court identifies three possible "disabilities" that Plaintiff has raised: (1) his adjustment disorder; (2) his overexposure to the chemical Varsol; and (3) his HIV status. Plaintiff's AC states that "[t]he disability is the HIV virus." AC ¶ 1. His AC fails to mention his adjustment disorder. However, Plaintiff states that he requested FMLA leave "due to overexposure of a chemical MIL-C-7024 Type II commonly known as Varsol." *Id.* As to this allegation, Plaintiff fails to produce any competent evidence that this exposure caused any illness or disability. Thus, the Court will construe Plaintiff's AC as being brought solely on the basis of disability discrimination as to his HIV.

Here, there is no dispute that Plaintiff was qualified for his position or that he was terminated from his employment at Valcor, so the Court will not address elements two and three of Plaintiff's *prima facie* case. Similarly, Defendant failed to address the fourth element required by the NJLAD – that Defendant replaced Plaintiff with someone similarly qualified. Thus, the critical issue is whether Plaintiff is disabled within the meaning of the ADA and the NJLAD.

Defendant argues that Plaintiff cannot show that he has a qualifying disability pursuant to the NJLAD.[6] Defendant contends that asymptomatic HIV is not a qualifying disability and that Plaintiff's claim must fail since he has not produced an expert to testify as to his disability. Def. Br. at 15-16. The Court disagrees. Defendant omits a key section of the first element, namely

---

[6] Defendant does not argue that Plaintiff cannot prove he is disabled under the ADA. However, "[i]n analyzing a claim for discrimination on the bases of a perceived disability, both the ADA and the NJLAD use an identical process." *Dennis v. Cty. of Atl. Cty.*, 863 F. Supp. 2d 372, 378 (D.N.J. 2012). Therefore, the Court's analysis as to Plaintiff's disability applies to his claims pursuant to the NJLAD and the ADA.

whether Plaintiff has "a disability or is *perceived* by the employer as disabled." *See Cinelli*, 77 F. Supp. 2d at 573 (emphasis added). As to perceived disability under the NJLAD, "even an innocent misrepresentation based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Id.* (citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144 (3d Cir. 1998)).[7] The analysis of a defendant's perception focuses not on the plaintiff, but rather on the "reactions and perceptions" of those working and interacting with him. *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996).

Here, Plaintiff has an actual disability, HIV, under both the NJLAD and the ADA. *See* N.J.S.A. § 10:5-5(q) ("Disability shall also mean AIDS or HIV infection."); *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998) (holding that HIV, even in the asymptomatic phase, is a disability under the ADA). Thus, Plaintiff only has to provide evidence that Defendant perceived him to have HIV, a disability pursuant to the NJLAD and the ADA, to meet the first element of his *prima facie* case. Plaintiff asserts that he informed Mann, Speakman, and Avallone of his HIV status at the meeting on April 24, 2012. In that meeting, Plaintiff asked for time off to attend doctors' appointments and the ability to take breaks at work, on an as needed basis. Connelly Cert., Ex. 3. Taking Plaintiff's statements as true, Defendant was aware of Plaintiff's disability, or at least perceived Plaintiff to have the disability, as of the date of the meeting. Considering Plaintiff's requested accommodations and short-term leave, it is reasonable to conclude that Defendant might

---

[7] Similarly, pursuant to the amendments to the ADA, a plaintiff bringing a "regarded-as" or "perceived" claim of disability discrimination under the ADA need only demonstrate that he was subjected to an adverse action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

13

have thought Plaintiff's disability was interfering with his job. *See Cinelli*, 77 F. Supp. 2d at 574 (finding that plaintiff taking significant time off work, coupled with his testimony that he told his employer of his disability, resulted in the reasonable inference that plaintiff's employers "regarded him as physically incapable of performing his work and thus disabled"). As is discussed further below, Defendant argues that Plaintiff's claims are not credible, but Defendant's credibility claims are not appropriate for resolution at the summary judgment stage.

Additionally, failure to present expert medical evidence of a disability or a substantial limitation in a major life activity is not dispositive at the summary judgment stage. *Marinelli v. City of Erie*, Pa., 216 F.3d 354, 360 (3d Cir. 2000). Where, as is the case here, the *prima facie* case turns on an employer's perception of Plaintiff's disability, the Plaintiff need not be disabled at all. *See Rogers v. Campbell Foundry Co.*, 185 N.J. Super 109, 113 (App. Div. 1982) (finding that non-disabled persons who are perceived as disabled by their employers are protected under the NJLAD). Rather, the employer must perceive the plaintiff to be disabled within the meaning of the NJLAD (or the ADA), a conclusion which does not require medical testimony. Overall, establishing a disability pursuant to the NJLAD is not meant to be high evidentiary standard.[8] *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 535 (D.N.J. 2008) ("[T]he evidentiary burden on Plaintiff at this stage is not intended to be laborious, and merely requires that the fact pattern is consistent with discriminatory intent."). Thus, Plaintiff has provided evidence as to the first element which creates a genuine issue of material fact thereby precluding summary judgment.

Defendant also argues that Plaintiff does not offer any credible evidence that Valcor was aware of Plaintiff's HIV when it terminated him, and therefore Defendant should be granted

---

[8] Similarly, under the Amendments to the ADA, "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." 42. U.S.C. § 12101(b)(5).

summary judgment on Plaintiff's ADA and NJLAD claims. Def. Br. at 17-22. Again, the Court disagrees.

Plaintiff claims that he advised Valcor of his HIV status in the April 24th meeting with Mann, Speakman and Avallone. Hoskins Tr. 45:08–45:19. Valcor again contends that in light of all the testimony Valcor has provided to the contrary, Plaintiff's statement is not credible. Def. Br. at 18-20. Valcor expends much effort assailing the credibility of Plaintiff's claim that he disclosed his HIV status during the April 2012 meeting. Valcor notes that the Speakman Memo refers to an "immune system" issue rather than HIV. Moreover, Valcor continues, both Mann and Avallone testified that Plaintiff did not say that he had HIV during the meeting. Valcor further states that the author of the memo, Speakman, has since passed and Plaintiff is taking advantage of this unfortunate event. However, all of Valcor's arguments focus on why Plaintiff should not be believed, or, in other words, Plaintiff's credibility. Valcor also notes that if Plaintiff had provided the VA document, Speakman would have included it in Plaintiff's file, and Speakman did not do so. While such arguments are perfectly appropriate at trial, they are not considered by the Court at the summary judgment stage. While Plaintiff's position may be unlikely, it is not so implausible that "no reasonable jury" could infer that Plaintiff's disclosure, coupled with his absences, led to Valcor perceiving Plaintiff to be disabled as defined by the ADA and the NJLAD. *See In re Bressman*, 327 F.3d at 238.

The testimony of a plaintiff, standing alone, may be sufficient to make out a case of discrimination capable of withstanding a summary judgment motion. *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987). Here, Plaintiff's testimony indicates that he advised Defendant of his HIV status in April 2012. While there may be some evidence contradicting this fact, this is a credibility determination that must be left to the jury. *See Schiavone Const. Co. v.*

*Time, Inc.*, 847 F.2d 1069, 1091 (3d Cir. 1988) (stating that in ruling on summary judgment motions, questions of credibility are to be left to a jury); *see also Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 550 (E.D. Pa. 2012) (finding that plaintiff's self-serving deposition testimony was sufficient to raise a genuine issue of material fact, even in light of defendants' contrary evidence). Moreover, Plaintiff's absences lend support to the conclusion that Valcor knew that Plaintiff had severe health problems. *Cf. Cinelli*, 77 F. Supp. 2d at 574. Thus, Plaintiff has shown that there is a genuine issue of material fact as to whether he can make out a *prima facie* case of discrimination under the ADA and the NJLAD. *See id.* (concluding that plaintiff's testimony that he told his employer he had cancer, coupled with his lengthy absences, created a genuine issue of fact as to whether defendants knew of plaintiff's cancer prior to firing him).

Continuing with the *McDonnell Douglas* framework, Defendant has put forth a legitimate, nondiscriminatory reason for firing Plaintiff. Plaintiff claims that he applied for leave pursuant to the FMLA in July 2102 due to his inhalation of a chemical commonly called Varsol. He did not seek leave due to his HIV status. In addition, Plaintiff failed to provide the requested medical documentation, but Defendant nonetheless granted Plaintiff's request for leave. Valcor also told Plaintiff to provide updates every four weeks while on leave. Plaintiff again failed to follow Defendant's directions and stopped communicating with Defendant upon his leave. At the end of Plaintiff's leave, he failed to return to work. Therefore, Defendant has demonstrated a legitimate, nondiscriminatory reason for Plaintiff's termination – Plaintiff's failure to return to work following his leave. Plaintiff has failed to present a genuine issue of material fact that discredits Defendant's reason for termination or produce evidence "that discrimination was more likely than not a motivating or determinative cause of the adverse action." *See Lawrence*, 98 F.3d at 66. Even if the Court were to credit Plaintiff's psychiatrist's note, the note does not refer to Plaintiff's HIV

status, which is the basis of Plaintiff's disability claim. Thus, Defendant is granted summary judgment as to Plaintiff's NJLAD and ADA claims.

C. Workers' Compensation Claim

Lastly, Plaintiff alleges wrongful termination, stating that Defendant terminated Plaintiff in retaliation to Plaintiff filing a workers' compensation claim. AC ¶ 4. The New Jersey Workers' Compensation Law makes it unlawful for an employer to discharge an employee because he has made a claim for benefits under that statute. N.J.S.A. 34:15-39.1. To establish a *prima facie* case of retaliatory discharge under this statue, Plaintiff must show (1) that he made or attempted to make a claim for workers' compensation benefits and (2) that he was discharged in retaliation for having done so. *Morris v. Siemens Components, Inc.*, 928 F. Supp. 486, 493 (D.N.J. 1996).

Here, it is unclear when Plaintiff filed a claim for workers' compensation. Plaintiff's deposition testimony is contradictory. *Compare* Hoskins Tr. 102:15-102:22 (stating he filed a filed a claim petition seeking workers' compensation benefits with the New Jersey Department of Labor in March of 2013) *with id.* 110:20-111:11 (stating that he filed a workers' compensation claim in or around September 2012).

Regardless of whether Plaintiff filed his workers' compensation claim before or after his termination, Plaintiff's claim fails. If Plaintiff's claim was filed in March of 2013, it was four months *after* he was terminated by Valcor on November 5, 2012. Thus, Valcor could not have based its termination decision on a claim that had yet to be filed. Even if Plaintiff's claim was filed prior to his termination, his argument cannot succeed because he has produced no evidence that Defendant was aware of his claim for benefits at that time. *Cf. Morris*, 928 F. Supp. at 493 (finding that "[w]ithout any specific evidence showing [a] plaintiff's discharge was in retaliation

for his having filed for workers' compensation benefits, [a] defendant's motion for summary judgment must be granted.").

For the foregoing reasons, the Court grants Defendant's motion for summary judgment as to each count.

### 3. CONCLUSION

For the reasons set forth above and for good cause shown, the Court **GRANTS** Defendant's motion for summary judgment. The Court **DENIES** Plaintiff's motion to strike Defendant's statement of uncontested facts. An appropriate form of order accompanies this opinion.

**Date:** March 16, 2017

_____
JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE